**41**

**Thomas CONTINI, et al., Plaintiffs,**

v.

**HYUNDAI MOTOR COMPANY,
et al., Defendants.**

**No. 90 Civ. 3547 (VLB).**

United States District Court,
S.D. New York.

May 28, 1993.

Harold L. Schwab, Lester Schwab Katz & Dwyer, New York City, for movant Hyundai.

Stephen Jenkins, Wiesen, Gurfein & Jenkins, New York City, for plaintiffs.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

This case brought pursuant to diversity of citizenship jurisdiction under 28 U.S.C. § 1332 involves a rear end collision between a truck and the victim's car, leading to personal injuries. The suit includes product liability claims against the defendant Hyundai Motor Company ("Hyundai").

Hyundai moves for a separate (bifurcated) trial on liability and damages pursuant to Fed.R.Civ.P. 42(b). I deny the motion without prejudice because decision in regard to bifurcation is premature at this stage of the litigation; new papers other than a notice of motion may, but need not, be filed if the motion is renewed.

Defendant Hyundai has indicated that it expects to submit a motion for summary judgment pursuant to Fed.R.Civ.P. 56. Until that motion is determined, I do not know whether the motion now before me will become moot, nor do I have as much factual information about the nature of the case as will be provided in connection with the Rule 56 motion.

In addition, should the motion for summary judgment be denied, I expect to consider use of a court-appointed expert pursuant to Fed.R.Evid. 706; see *Reilly v. United States*, 863 F.2d 149, 154–61 (1st Cir.1988). The presence or absence of an expert who would not have a strong pre-commitment to either side may have a significant impact on the structure of the trial.

Concern about the impact of presentation to lay juries (who cannot study background written material and ask extensive questions of experts to assure understanding of complex concepts [1]) of testimony given by biased experts is increasing. This reflects the-ever-more technical nature of issues presented in product liability and similar intricate litigation. See generally *Lynch v. Merrell–National Laboratories*, 830 F.2d 1190 (1st Cir. 1987); *Viterbo v. Dow Chemical Co.*, 826 F.2d 420 (5th Cir.1987); *Murray International v. New York Telephone Co.*, 1993 WL 82531 (S.D.N.Y.1993); Committee on Product Liability, "Discovery of Expert Witnesses Under Federal Rule 26," 44 Record of Ass'n Bar City N.Y. No 5 at 534 (June 1989).

This phenomenon may be especially troublesome where, for example, a significant part of the livelihood of an expert is drawn from testimony favorable to a particular side of a controversy, or where an expert is dependent upon income from an industry close-

---

1. See Markey, *Some Patent Problems,* 80 F.R.D. 203 (1979).

ly connected to the interests of one side or another. Requiring the fullest disclosure of potential sources of partiality of expert witnesses represents an important if incomplete response to this problem. See *Trower v. Jones*, 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988) (upholding demand for cross-examination of sources of experts' income).

With proper cross-examination, generalist factfinders may be able to assess experts' credibility. This does not assure generalists' ability to reach correct affirmative conclusions with respect to controverted obscure technical issues, a challenge deserving of continuing attention.

After decision upon Hyundai's motion for summary judgment (should that motion be denied), and after determination of whether to utilize a court appointed expert, I shall be in a better position to determine the more useful procedure for the trial.[2]

Once the motion for summary judgment, the role if any of a court appointed expert, and the proper method of trial are determined, the question of bifurcation will fall into proper focus.

Counsel for the moving party is directed to furnish copies of this memorandum order to all other counsel of record.

SO ORDERED.

---

**2.** The parties are currently in the process of submitting papers concerning the method of trial. While the relief sought is still regarded as the most significant factor relevant to application of the concept of a suit at common law under the Seventh Amendment, the status of the type of claim involved (here, strict product liability) in 1791 is increasingly considered relevant. See *Woodell v. IBEW*, — U.S. —, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *Tull v. United States*, 481 U.S. 412, 422–25, 107 S.Ct. 1831, 1838–39, 95 L.Ed.2d 365 (1987); Devlin,

"Jury Trial of Complex Cases: English Practice at the Time of the Seventh Amendment," 80 Colum.L.Rev. 43 (1980).

Similarly, where complexity of expert testimony is sufficient to make it implausible that a jury trial could permit meaningful evaluation of the facts as to an issue, the Seventh Amendment may be inapplicable to determination of that issue according to *In re Japanese Electronic Products Antitrust Litigation*, 631 F.2d 1069 (3d Cir.1980) and similar decisions which, although infrequently followed subsequently, have never been overturned or overruled.