Thomas CONTINI, et al., Plaintiffs,

v.

HYUNDAI MOTOR COMPANY, et al., Defendants.

No. 90 Civ. 3547 (VLB).

United States District Court, S.D. New York.

Dec. 15, 1993.

Monte J. Rosenstein, Rosenstein & Helhoski, Middletown, NY, for defendant Kappos.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case brought pursuant to diversity of citizenship jurisdiction under 28 USC § 1332 involves a rear end collision between a truck and the victim's car, leading to personal injuries.[1] The suit includes product liability claims by the plaintiffs, the victims of the accident, against the defendant Hyundai Motor Company ("Hyundai").

Plaintiff and some defendants argue that the Hyundai vehicle involved in the collision was defective because (a) its front seat collapsed backward too freely, contributing to the injuries sustained, and (b) its seat belt failed to restrain an occupant of the front seat. Hyundai has moved for summary judgment on the ground that its vehicle was not defective. I deny the motion without prejudice to its renewal within 45 days of the date of this memorandum order based upon a more complete factual showing as set forth below. Should the motion be renewed, all submissions of the parties currently on file will be deemed resubmitted, and may be supplemented by further materials relevant to the issues.

### II

▬ Evidence offered by Hyundai in support of its contention that it is in full compliance with regulatory requirements under 49 CFR § 571, while relevant and potentially persuasive, does not by itself establish beyond reasonable dispute that its vehicle was not defective. Such requirements, unless otherwise provided, do not affirmatively authorize any particular course of conduct. Compare *Schmoeger v. Algonquin Gas Transmission Co.*, 802 F.Supp. 1084 (S.D.N.Y.1992). Instead, they merely establish minimum standards. The applicability of this general concept is specifically confirmed in the case of automobiles by 15 U.S.C. § 1397(c), which provides:

Harold L. Schwab, Lester Schwab Katz & Dwyer, New York City, for movant Hyundai.

Stephen Jenkins, Wiesen, Gurfein & Jenkins, New York City, for plaintiffs.

1. See *Contini v. Hyundai Motor Co.*, 149 F.R.D. 41 (S.D.N.Y.1993).

Compliance with any Federal Motor Vehicle Standard ... does not exempt any person from liability under common law. See generally *Murphy v. Nissan,* 650 F.Supp. 922 (E.D.N.Y.1987); *Garrett v. Ford Motor Co.,* 684 F.Supp. 407 (D.Md.1987).

▌ In a diversity of citizenship case, a United States district court sits as if a state court, and as such can, as would a state court, consider federal standards even if not directly binding. See *Hofbauer v. Northwestern National Bank,* 700 F.2d 1197, 1201 (8th Cir.1983); *Mendel v. Production Credit Ass'n,* 862 F.2d 180, 183 (8th Cir.1988). To hold a federal regulation *binding* if a federal statute expressly states the contrary, would, however, violate federal law contrary to the Supremacy Clause contained in Article VI § 2 of the Constitution. See *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *The Federalist* No. 82 (Hamilton) in *Modern Lib. ed.* 534 (1937); see also *Rodriguez v. Westhab,* 833 F.Supp. 425 (S.D.N.Y. 1993).

▌▌ Declining to hold compliance with regulatory standards a complete defense in products liability litigation does not mean they have no impact. A claim that a complying product is defective may be "implausible" and thus require "more persuasive evidence to support [it] than would otherwise be necessary." *Matsushita Electric Industrial Co. v. Zenith,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Public sector studies supporting regulatory requirements may also be considered pursuant to Fed. R.Evid. 803(8); see *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988).

### III

▌ Stephen P. Wood, acting on behalf of the Chief Counsel of the National Highway Traffic Safety Administration in a letter to an industry association dated August 8, 1991, wrote on page 2 that under Standard 1209 S4.1(b), safety belts were required to be designed to be capable of restraining a passenger, and that failure of actual performance "*could* indicate that the lap belt failed to comply ..." (emphasis in original). Such *ex parte* staff advice, not formally adopted by the agency or published in the Federal Register, is not binding on the courts. See 5 U.S.C. § 552(a); 5 U.S.C. § 500 *et seq.;* 44 U.S.C. §§ 1501–1511. They may, however, be persuasive, just as commentary by non-governmental sources might be if perceptive. See *Southwest Sunsites v. F.T.C.,* 785 F.2d 1431 (9th Cir.1986).

The Wood letter tends to undermine any contention that the existence of S4.1(b) offers a shield to an automobile manufacturer if its seat belt fails to function effectively. According to the letter, such a circumstance might well suggest a violation of the standard, although such a violation is not necessarily required for common law liability (see 15 U.S.C. § 1397).

### IV

▌ While plaintiffs have the ultimate burden of proof, Hyundai must establish that there is no genuine issue of material fact. Faced with the uncontroverted facts that the accident occurred and that the Hyundai vehicle's front seat collapsed backward in such a way as to contribute to the injuries incurred, and that its seat belts failed to restrain the front seat occupant, Hyundai has also offered expert affidavits and supporting studies indicating that its vehicle is properly designed. Hyundai's submissions, however, are incomplete or insufficient in the following respects:

(a) They do not establish in detail that the particular vehicle involved in the accident was properly manufactured, rather than that any manufacturing defect contributed to failure of the seat and seatbelt to restrain the front seat and its passenger sufficiently to prevent or more effectively mitigate the injuries suffered as a result of the accident.

(b) They do not indicate how effectively a state-of-the-art optimally designed and manufactured seat belt produced at the time of the vehicle involved would function to restrain a passenger in an accident such as that involved here, and how such performance would compare with that of the Hyundai involved in the accident.

(c) They do not indicate whether any vehicles of other manufacturers as of the date of the manufacture of the vehicle involved had front seat backs which would collapse backward less readily than did the seat back in

the Hyundai in question (whether because of one-sided gearing at the base of the seat or otherwise).

(d) They do not indicate what, if anything, is known about the safety record or accident experience with seats designed to collapse backward less readily than the Hyundai vehicle involved here.[2]

SO ORDERED.

2. Plaintiffs have submitted a videotape of a "60 Minutes" program containing statements that other manufacturers have utilized more rigid (but of course not entirely rigid) front seats.

Evidence need not be in admissible form to be considered in connection with a summary judgment motion under Fed.R.Civ.P. 56. *Offshore Aviation v. Transcon Lines*, 831 F.2d 1013, 1015 & n. 1 (11th Cir.1987); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The hearsay contained in the "60 Minutes" program, while suggesting potential sources of admissible evidence as defined in Fed.R.Civ.P. 26((b)(1), is insufficiently specific to form any part of a basis for granting or denying summary judgment. Reliability is necessary for evidence to be considered under Fed.R.Evid. 403 even though it need not be in admissible form for purposes of Fed.R.Civ.P. 56; compare also Fed. R.Evid. 803(24), 804(b)(5).

Although I do not consider the "60 Minutes" videotape as affirmative evidence in favor of plaintiffs, Hyundai may initially be expected to have access to industry information concerning the existence of and experience with, firmer seat backs. Its failure to provide such information or to explain inability to do so might support an adverse inference. See *Interstate Circuit v. United States*, 306 U.S. 208, 225–26, 59 S.Ct. 467, 473–74, 83 L.Ed. 610 (1939); *Brink's, Inc. v. City of New York*, 717 F.2d 700 (2d Cir.1983); *Fera v. Roche*, 147 F.R.D. 58 (S.D.N.Y.1993); *Rivera v. O'Neill*, 146 F.R.D. 93 (S.D.N.Y.1993).