Thomas A. CONTINI, an infant by his parents and natural guardians, Alexander F. CONTINI and Deborah M. Contini, and Alexander F. Contini and Deborah M. Contini, Individually, Plaintiffs,

v.

HYUNDAI MOTOR COMPANY, Pickle King, Inc. and Antonios Kappos, Defendants.

No. 90 Civ. 3547 (JGK).

United States District Court, S.D. New York.

Feb. 16, 1995.

---

Stephen Jenkins, Richard Gurfein, Wiesen, Gurfein & Jenkins, New York City, for plaintiffs.

George F. Roesch III, MacVean, Lewis, Sherwin & McDermott, P.C., Middletown, NY, for plaintiff Deborah Contini.

Harold Lee Schwab, T. Steven Har, Lester Schwab Katz & Dwyer, New York City, for defendant Hyundai Motor Co.

Peter Larkin, Drake Sommers Loeb Tarshis & Catania, Newburgh, NY, for defendant Pickle King, Inc.

John KcKenna, Rosenstein & Helhoski, P.C., Middletown, NY, for defendant Antonios Kappos.

## MEMORANDUM AND ORDER

KOELTL, District Judge:

This case arose out of a two-vehicle accident that occurred on December 4, 1987 at approximately 1:25 p.m. on Route 17K in Newburgh, New York. Deborah Contini was driving her 1987 Hyundai Excel. Her infant son, Thomas, was seated behind her in the back seat in a Fisher Price child restraint seat. The Continis' Hyundai was struck from the rear by a Mercedes truck, owned by defendant Pickle King and driven by defendant Antonios Kappos. The force of the collision caused the driver's seat to yield towards the back of the vehicle. Thomas Contini's head struck a surface within the vehicle, resulting in severe injuries, including brain damage.

The plaintiffs allege that defendants Pickle King and Kappos are liable for negligence and that defendant Hyundai Motor Company ("Hyundai") is liable for defective manufacture, defective design (including defective design of the seat belt/seat system), failure to warn, negligent design and manufacture and breach of implied warranties. They contend that the design of the seat belt in the Continis' Hyundai was defective because, during the collision, it permitted Deborah Contini to move along the seat back towards the rear of the car, causing her head to strike her infant son's head. (This movement is called "ramping" by the plaintiffs.) In support of this claim, the plaintiffs allege that the seat belt violated Federal Motor Vehicle Safety Standard ("FMVSS") 209 S4.1(b).

Hyundai has made a motion *in limine* to preclude the plaintiffs from offering testimony to the jury regarding the meaning of FMVSS 209 S4.1(b). FMVSS 209 regulates seat belts; the relevant portion provides:

**Pelvic Restraint.** A seat belt assembly shall provide pelvic restraint whether or not upper torso restraint is provided, *and*

*the pelvic restraint shall be designed to remain on the pelvis under all conditions, including collision or roll-over of the motor vehicle.*

FMVSS 209 S4.1(b) (emphasis added). Specifically, Hyundai has sought to preclude testimony of the plaintiffs' expert, Alan Cantor, interpreting the statute for the jury. Hyundai also has asked the Court to rule, as a matter of law, that under the proper interpretation of FMVSS 209 S4.1(b), the subject Hyundai did not violate FMVSS 209 S4.1(b). Hyundai argues that FMVSS 209 S4.1(b) is a "design standard" and not a "performance standard" and that performance of a seat belt during an accident is irrelevant to the issue of whether the seat belt complied with the standard. It argues further that because FMVSS 209 S4.1(b) is a design standard, the plaintiffs cannot prove that the seat belt in the Continis' Hyundai Excel violated the standard. Finally, it argues that FMVSS 209 S4.1(b) is a nullity because it is not an objective standard.

### I.

The parties agree that the meaning of FMVSS 209 S4.1(b)—a matter of statutory construction—is an issue for the Court and that, therefore, it should not be a subject for expert testimony before the jury. *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900–01 (7th Cir.1994) (allowing the jury to resolve the experts' conflicting testimony about the meaning of Federal Motor Vehicle Safety Standards was "a serious mistake"—the district court should have resolved the questions with respect to the meanings of the standards "and provided the jury with the proper answer, so that experts for each side could address their testimony to the governing standards[ ]"); *Stissi v. Interstate & Ocean Transp. Co.*, 765 F.2d 370, 374 (2d Cir.1985) ("When a decision turns on the meaning of words in a statute or regulation, the decision is one of law which must be made by the court."); *Payne v. A.O. Smith Corp.*, 627 F.Supp. 226, 228 (S.D.Ohio 1985) (expert could not define and interpret Consumer Product Safety Commission rules because such testimony would constitute a legal

opinion as to the meaning of the rules and the defendants' alleged violation of the rules).

██ Similarly, the parties agree that their experts should not testify as to whether the subject Hyundai violated or complied with the standard. *See United States v. Bilzerian*, 926 F.2d 1285, 1294–95 (2d Cir.) (experts should not testify to legal conclusions but it was not error for an expert to testify to the background of securities regulation, filing requirements and hypotheticals without testifying that the defendant's behavior violated the securities law), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). The plaintiffs indicate that they do not intend to have Mr. Cantor testify as to whether the subject Hyundai violated the safety standard. They argue, appropriately, that their expert should be allowed to "testify as to what occurred in this accident and what the deficiencies in the design and performance of the Hyundai seat belt system and seating system were in the Hyundai Excel." (Jenkins Aff. in Opp'n at 2.) [1]

██ Following the clear holdings of *Bammerlin* and *Bilzerian*, the Court will instruct the jury on the existence and the meaning of FMVSS 209 S4.1(b).

## II.

In instructing the jury on the meaning of FMVSS 209 S4.1(b), the Court will rely on the plain language of the standard, along with the interpretations given to the standard by the National Highway Traffic Safety Administration ("NHTSA"), by Judge Broderick in his opinion denying summary judgment in this case and by other courts that have dealt with the standard.

The statutory framework for safety standards is set forth in the National Traffic and Vehicle Safety Act, 15 U.S.C. §§ 1381–1431 (1982).[2] 15 U.S.C. § 1392 provides, in relevant part: "The Secretary shall establish by order appropriate Federal motor vehicle safety standards. Each such Federal motor vehicle safety standard shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms." 15 U.S.C. § 1392(a) (1982).[3]

The statute defines "motor vehicle safety" and "motor vehicle safety standards" as follows:

'[M]otor vehicle safety' means the performance of motor vehicles or motor vehicle equipment in such a manner that the public is protected against unreasonable risk of accidents occurring as a result of the design, construction or performance of motor vehicles and is also protected against unreasonable risk of death or injury to persons in the event accidents do occur, and includes nonoperational safety of such vehicles....

'[M]otor vehicle safety standards' means a minimum standard for motor vehicle performance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria.

The purpose of H.R. 1758 is to restate in comprehensive form, without substantive change, certain general and permanent laws related to transportation and to enact those laws as subtitles II, III, and V–X of title 49, United States Code, and to make other technical improvements in the Code. In the restatement, simple language has been substituted for awkward and obsolete terms, and superseded, executed, and obsolete laws have been eliminated.
H.R.Rep. No. 103–180, 103d Cong., 2d Sess. 5 (1994), *reprinted in* 1994 U.S.C.C.A.N. 818, 818. The provisions of the two statutes are cross-referenced in this opinion for purposes of convenience and clarity.

---

1. While the plaintiffs also state that it is appropriate to have their expert introduce the standard and the accompanying documents, as discussed below, the Court, rather than an expert, will instruct the jury on the existence and the meaning of the standard.

2. In the parties' papers, they generally refer to sections of the National Traffic and Vehicle Safety Act that were in effect at the time of the car purchase and accident in this case but which were repealed and reenacted under Title 49 of the United States Code on July 5, 1994. The revised statute, the Motor Vehicle Safety Act, is codified at 49 U.S.C.A. §§ 30101–30169 (West 1994). The revisions of the sections upon which the parties rely do not vary in substance from the reenacted provisions. This is consistent with the legislative history of the new statute. For example, as noted in the House report:

3. 49 U.S.C. § 30111(a) represents the current statutory provision and is substantially the same.

544

15 U.S.C. § 1391(1), (2) (1982).[4] As discussed above, FMVSS 209 S4.1(b) provides clearly:

> **Pelvic Restraint.** A seat belt assembly shall provide pelvic restraint whether or not upper torso restraint is provided, and the pelvic restraint shall be designed to remain on the pelvis under all conditions, including collision or roll-over of the motor vehicle.

FMVSS 209 S4.1(b).

■ NHTSA has interpreted the standard to mean precisely what it says. It is appropriate to rely upon NHTSA's interpretation of the standard when it is consistent with the purpose and wording of the regulation because NHTSA is the agency responsible for promulgating and enforcing safety standards under the Act. *See O'Bryan v. Volkswagen of America, Inc.,* 838 F.Supp. 319, 322 (W.D.Ky.1992) (noting, in a case interpreting FMVSS 209 S4.5.3, that "[t]he United States Supreme Court has instructed that a reviewing court should give effect to the agency's interpretation of its own regulations . . . so long as the interpretation sensibly conforms to the purpose and wording of the regulations[ ]") (citations omitted).

■ NHTSA has made clear that the standard at issue is not simply a "hortatory design goal" and that it is a safety standard that is practicable, that meets the need for motor vehicle safety and that is stated in objective terms. *See* 15 U.S.C. § 1392(a) (1982).[5] In a letter dated August 8, 1991 that was written in response to a specific request about the meaning of the standard, Paul Jackson Rice, NHTSA's Chief Counsel, explained the meaning of FMVSS 209 S4.1. He stated, in relevant part:

> [W]e believe that the requirement of S4.1(b) of Standard No. 209 means that safety belts must be designed to be capable of being properly adjusted and positioned on the pelvis of occupants ranging from 6–year–old children to 95th percentile adult males. The belts must also be capable of remaining on the pelvis of such

occupant during collision or roll-over. A belt system that was not capable of being positioned on the pelvis and remaining there during crashes would not comply with S4.1(b). . . .

> [W]e offer the following observations. First, the fact that a lap belt moved off the occupant's pelvis during a collision would *not* of itself show that the lap belt failed to comply with S4.1(b) of Standard No. 209. Compliance with S4.1(b) of Standard No. 209 is determined by the design of the safety belt system, not the performance of individual safety belts while in service. Second, the actual performance of a safety belt in a vehicle (e.g., a lap belt moving off the occupant's pelvis during a crash) *could* indicate that the lap belt failed to comply with S4.1(b).

Letter from Rice to Johannessen of August 8, 1991 at 1–3 ("Rice Letter") (emphasis in original). The NHTSA interpretation of the standard is consistent with the language of the standard itself. Therefore, it is appropriate for expert and fact witnesses to testify about the design of the seat belt as well as whether the performance of the seat belt in a crash indicates that the pelvic restraint was defectively designed.

This interpretation of the standard, that considers performance as potentially relevant and probative evidence with respect to the issue of defective design, is consistent with Judge Broderick's opinion in which he denied Hyundai's motion for summary judgment. Judge Broderick found that the letter indicated that the failure of a seat belt to function effectively (i.e., to perform) could suggest a violation of the standard. *Contini v. Hyundai Motor Company,* 840 F.Supp. 22, 24 (S.D.N.Y.1993) (Broderick, J.). He noted that the letter could be considered "persuasive" by a court considering the meaning of the standard. *Id.*

This interpretation of the standard also is consistent with the interpretation given to the standard by the few courts that have construed FMVSS 209 S4.1(b). Hyundai's

---

**4.** 49 U.S.C. § 30102(a)(8) and (9) represent the current statutory provisions and are substantially the same.

**5.** 49 U.S.C. 30111(a) represents the current statutory provision and is substantially the same.

effort to exclude any evidence of the design and performance of the seat belt under FMVSS 209 S4.1(b) is not supported by the cases. In *Guentzel v. Toyota Motor Corp.*, 768 S.W.2d 890 (Tx.Ct.App.1989), the court held that there was sufficient evidence to support the jury's verdict that the lap belt restraint system in the rear seat of a car was not defectively or negligently designed. *Id.* at 897. The parties in *Guentzel* agreed that the case turned upon whether or not the seat belt remained "upon the pelvis and beneath the iliac crest[ ]" during the accident because if it did not, the standard was violated. *Id.* at 892. The jury was presented with extensive and conflicting expert testimony about the location of the passenger's injuries in order to decide the issue. The court found that the record was sufficient to support the jury's resolution of such conflicting evidence. *Id.* at 897; *see also Hurt v. General Motors Corp.*, 553 F.2d 1181, 1182 (8th Cir.1977) (affirming a jury verdict for the defendant in a case where the court received expert testimony about the design and performance of seat belts in the context of FMVSS 209; the Court of Appeals concluded that there was no evidence of defective condition of the seat belt).

Therefore, it is appropriate for the jury in this case to consider the testimony of fact witnesses and expert witnesses relating to both the design and the performance of the seat belt in determining whether the standard was complied with or violated. The experts will be permitted to give limited background information about FMVSS 209 S4.1(b) under *Bilzerian*. They will not be allowed to testify about whether the seat belt complied with or violated the standard—that is a question of fact for the jury to decide. The Court will instruct the jury on the law before the experts testify about the design and performance of the pelvic restraint. The parties may submit any proposed requests for instructions to be given to the jury on the meaning of FMVSS 209 S4.1(b) consistent with the standard and this opinion.

### III.

Hyundai contends that FMVSS 209 S4.1(b) is invalid under the enabling statute because it does not have objective testing criteria to determine compliance. *See* 15 U.S.C. § 1392(a) (1982) [6]; *see also Chrysler Corp. v. Department of Transp.*, 472 F.2d 659, 676 (6th Cir.1972) (explaining objectivity requirement).[7] The Court rejects this challenge for several independent reasons.

6. 49 U.S.C. § 30111(a) represents the current statutory provision and is substantially the same.

7. In *Chrysler Corp. v. Department of Transportation*, 472 F.2d 659 (6th Cir.1972), several domestic and foreign automobile manufacturers sought judicial review of FMVSS 208. They argued that FMVSS 208 did not meet the statutory requirement of objectivity. *Id.* at 675. The court explained the requirement of objectivity:

> Objective, in the context of this case, means that tests to determine compliance must be capable of producing identical results when test conditions are exactly duplicated, that they be decisively demonstrable by performing a rational test procedure, and that compliance is based upon the readings obtained from measuring instruments as opposed to the subjective opinions of human beings.

*Id.* at 676. The automobile manufacturers argued, and the court held, that the tests prescribed by the standard, which required the use of an anthropomorphic dummy, did not provide sufficiently objective criteria because the characteristics of the dummy were not adequately specified. *Id.* at 676–78.

Hyundai's reliance on *Chrysler*, however, is misplaced. *Chrysler* is distinguishable in several respects. First, as discussed below, Hyundai has not brought an appropriate action to review the validity of the safety standard as the petitioners did in *Chrysler*. Second, Hyundai is not challenging a particular testing procedure that is set forth in a safety standard as in *Chrysler* and thus has not pointed to a specific aspect of a test, claiming that it is not objective. Finally, the standard in this case is objective.

Similarly, in *Paccar, Inc. v. National Highway Traffic Safety Admin.*, 573 F.2d 632 (9th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 172 (1978), like in *Chrysler*, the petitioners brought an appropriate action, in the court of appeals, to review the validity of a safety standard pursuant to 15 U.S.C. § 1394. *Id.* at 636. As in *Chrysler*, the petitioners challenged specific testing procedures. They argued that the "skid number method" of measuring stopping distances and thus determining whether a vehicle complied with FMVSS 121, which regulates air-braked trucks and tractor-trailers, was not sufficiently objective. *Id.* at 644. The court disagreed and held that, under the definition of objective set forth in *Chrysler*, the test procedure was sufficiently objective. *Id.* The petitioners also challenged a road testing procedure that the

First, Hyundai's reliance on *Chrysler* is misplaced because Hyundai has not challenged the standard in an appropriate proceeding. Congress has given the courts of appeals jurisdiction to review Federal Motor Vehicle Safety Standards, based upon a full record of the proceedings during which the standards were promulgated. *See* 49 U.S.C.A. § 30161 (West 1994)[8]; *see also Nader v. Volpe,* 466 F.2d 261, 269, 271 (D.C.Cir.1972) (judicial review under the National Traffic and Motor Vehicle Safety Act is to occur in the form and in the forum specified by the statute in the absence of agency action which is "ultra vires or damaging beyond the capability of the statutory procedure to repair[ ]"); *First National Bank of Scotia v. United States,* 530 F.Supp. 162, 167 (D.D.C.1982) (noting, in the context of the Financial Institutions Supervisory Act of 1966, that "even where Congress has not expressly conferred exclusive jurisdiction [to review agency action], 'a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute[ ]'") (citation omitted).

49 U.S.C. § 30161 sets forth a procedure for judicial review whereby a "person adversely affected by an order prescribing a motor vehicle safety standard" may file a petition for judicial review in a court of appeals prior to the sixtieth day after such order is issued. *See* 49 U.S.C.A. § 30161(a) (West 1994). The Secretary files a "record" containing all of the information upon which the promulgation of the safety standard was based. *See* 49 U.S.C.A. § 30161(b) (West 1994). The court is then in a position to review the standard and to determine whether it is supported by substantial evidence. *See, e.g., Chrysler,* 472 F.2d at 678 (holding that a portion of FMVSS 208 was invalid). In *Chrysler,* the court foresaw that the validity of safety standards could be placed in issue in litigation in various ways, including products liability suits. *Chrysler,* 472 F.2d at 670 & n. 13. The statute itself recognizes that the procedure for review in the statute is non-exclusive. *See* 15 U.S.C. § 1394(a)(6) (1982).[9] The court thus recognized that overly circumscribing the scope of review by the courts of appeals would invite a "chaotic" situation in which the validity of a safety regulation would be left in doubt to be resolved in subsequent litigation, to the disadvantage of manufacturers and the public. *Chrysler,* 472 F.2d at 670. The court found that this possibility demonstrated the importance of its ability to conduct a thorough review of the validity of the standard in the manner prescribed by the statute. *Id.* The court thereby stressed the need for full and prompt appellate review of the standard to avoid the situation, which Hyundai now proposes, whereby the validity of the regulation could be called into doubt long after its promulgation. *Id.* Absent the extraordinary situations described in *Nader,* which do not exist in this case, Hyundai should not be allowed to use this case to accomplish an end run around the statutory procedure for challenging the standard.

Second, principles of estoppel and waiver weigh heavily in favor of rejecting Hyundai's challenge to the standard on the eve of trial. At any time in the five years during which this litigation has been pending, Hyundai could have challenged the regulation and asked for a ruling. It chose not to do so; instead, it chose to accept the validity of the standard and to argue that the standard was satisfied. At least since December of 1990, when Hyundai received the report from the plaintiffs' expert, Alan Cantor, Hyundai has known that it is Mr. Cantor's opinion that the seat belt in the Continis' Hyundai violated FMVSS 209 S4.1(b). Since that time, Hyundai has argued, repeatedly, that FMVSS 209 S4.1(b) does not require that a seat belt remain over the pelvis.

For example, in the Joint Pretrial Order that was submitted by the parties on September 2, 1992, Hyundai summarized the testimony of David Blaisdell and Richard Stalnaker, two of its expert witnesses, who

---

court found to be neither practicable nor objective. *Id.*

8. 15 U.S.C. § 1394 represents the former statutory provision and is substantially the same.

9. 49 U.S.C. § 30103(d) represents the current statutory provision pertaining to non-exclusivity.

Hyundai proposed to testify that the subject seat belt did not violate FMVSS 209, refuting Mr. Cantor's testimony on precisely this claim. Similarly, in its Trial Memorandum that it submitted to the Court only last week, Hyundai explained that its experts will prove that Hyundai complied with all applicable governmental and industry standards. And, Hyundai included with the Joint Pretrial Order a proposed jury instruction about the weight the jury should give to evidence of applicable governmental standards and statutory regulations. It plainly would be unfairly prejudicial to the plaintiffs to allow Hyundai to attempt to negate a substantial basis for the plaintiffs' expert testimony based on a new theory of the invalidity of the standard. Significantly, Hyundai has had all of the relevant information throughout this lawsuit, the standard Hyundai now claims is a nullity was promulgated decades ago and *Chrysler* was decided over twenty years ago.

Finally, the substance of Hyundai's challenge to the standard is unfounded. FMVSS 209 S4.1(b) is straightforward and objective, as explained in the NHTSA letter discussed above. It satisfies the statutory criteria for objectivity, the only objection raised by Hyundai with respect to the standard. The method of testing, as the plaintiffs point out, can be by visual observation. In *Chrysler*, the court recognized that visual inspection can be an objective testing method in certain circumstances. *Chrysler*, 472 F.2d at 676 n. 22. This is the method by which Hyundai determined that its 1987 Excel complied with FMVSS 209 S.4(b). Indeed, in March, 1986, the United States Testing Company, at Hyundai's request, certified that the Hyundai Excel complied with FMVSS 209 S4.1(b) using visual examination. Hyundai did not protest, at that time, that the standard was not objective or that it could not be measured.

It is appropriate to receive Hyundai's present challenge to the standard with skepticism. This particular safety standard was one of the original safety standards promulgated under the Act. *See* Rice Letter at 2. The parties have indicated that the standard has never been challenged. Therefore, Hyundai and other car manufacturers have been certifying their compliance with the standard for decades without any alleged inability to do so.

For all of the foregoing reasons, the defendant's motion is granted in part and denied in part as explained herein.

**SO ORDERED.**