NOT DESIGNATED FOR PUBLICATION

No. 128,050

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KOLTON KINCAID,
*Appellee*,

v.

KUBOTA TRACTOR CORPORATION, et al.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; KEITH SCHROEDER, judge. Oral argument held October 14, 2025. Opinion filed May 15, 2026. Affirmed.

*James M. Armstrong* and *David E. Rogers*, of Foulston Siefkin LLP, of Wichita, and *Daniel J. Buller*, of the same firm, of Overland Park, for appellant.

*Jesse Tanksley* and *Michael J. Wyatt*, of Mann Wyatt Tanksley, of Hutchinson, for appellee.

Before ISHERWOOD, P.J., CLINE, J., and COURTNEY D. CRAVER, District Judge, assigned.

ISHERWOOD, J.: Kolton Kincaid brought this products liability claim following a catastrophic injury he suffered while riding on the outside of a skid steer manufactured by the Kubota Tractor Corporation (Kubota). The matter was tried to a jury and resulted in an award of over $22 million to Kincaid. Kubota appeals to this court for a determination of whether the district court erred when it denied Kubota's multiple requests for a judgment as a matter of law, and whether Kincaid was required to provide expert testimony to establish the requisite standard of care. We have carefully reviewed the record in conjunction with an extensive analysis of the claims presented to us for

1

consideration and decline to find that this trial was tainted by error. The decisions of the district court are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2013, Eric Harbaugh purchased a Kubota compact track loader, model number SVL 90 (skid steer). He then leased the skid steer to his company, HVJ Services, LLC, (HVJ), which provided various services to farmers.

In November of that year, a work crew made up of Jacob Kentzler, Kolton Kincaid, and Riley Waggoner were in Harbaugh's employ, which was a regular occurrence. Each young man hailed from a farming family and, as such, were acclimated to the rigors of farming from a very young age. On the day in question, they were using a skid steer to resume their assigned task of installing a fence. Because it was cold, wet, and muddy, and their worksite was situated in the middle of a large field, the three boys decided that Kentzler would drive the skid steer to the worksite with Kincaid and Waggoner catching a ride. Kincaid sat on the front step designed to help the operator climb into the cab of the machine.

As the skid steer approached a ravine with standing water, Kincaid signaled to Kentzler to raise the loader arms. When Kentzler did so, the mechanism caught Kincaid between the grapple attachment and the cab overhang, compressing Kincaid's spine and causing a traumatic injury that rendered Kincaid a paraplegic.

Various warnings were attached to different portions of the skid steer, including a placard inside the cab which cautioned: "Warning—To Avoid Injury: Read and understand Operator's Manual before operating this machine." It also warned: "Keep by-standers away when operating" and "Never carry riders." The operator's manual instructed to "not allow passengers to ride on any part of the machine at any time." An

additional label on the outside of the cab displayed a pictogram that warned against people riding in the bucket attachment of the skid steer while it is operated. The picture consisted of a rudimentary drawing of a person standing in the bucket while it is in a raised position paired with a second drawing of the person landing on their head.

Kubota's sales records reflected that it sold 136,386 skid steers, including this model, in the United States between 2010 and 2023. Kubota maintained records on reported skid steer incidents, accidents, and injuries. Kincaid's injury was the only record that Kubota had of anyone being injured from riding on their skid steer loaders. Kubota had never had another reported accident involving a rider on an attachment.

The district court initially granted summary judgment to Kubota on Kincaid's failure to warn claim. Kincaid appealed to this court and the decision was reversed upon finding that fact questions remained with respect to Kincaid's knowledge of the danger. As a result, the case was remanded for further proceedings. *Kincaid v. Kubota Tractor Corp.*, No. 120,950, 2020 WL 3022977, at *9-10 (Kan App. 2020) (unpublished opinion).

The case proceeded to a jury trial and during cross-examination Kincaid acknowledged that he knew Kubota expressly told skid steer users never to ride on the machine. He testified as follows:

"Q. Mr. Kincaid, I want to make sure I understand a couple things. You knew the precaution you were suppose[d] to take to avoid injury in this situation, which is not riding on the machine, correct?
"A. Yes.
"Q. You also knew the safeguard that you were supposed to take to avoid injury on this machine, which is not riding on the machine, correct?
"A. Yes.
"Q. Now, you could have chosen not to ride on the machine that day?

3

"A.  Yes."

Kincaid also spoke about the pictogram that warned against using the bucket to lift a person—what they referred to as a "man lift." Kincaid acknowledged that he used the skid steer in that capacity many times in the past, despite understanding the warning against it. Kubota's counsel asked Kincaid about a video posted online that showed Kincaid, after his accident, using a skid steer as a man lift. The skid steer operator used the bucket to hoist Kincaid into a combine. Kincaid acknowledged that he used the skid steer for that purpose after his accident given the nature of his injury.

Kincaid also expressed awareness that using a skid steer as a man lift to reach something above you could result in being crushed against an object above you. Kubota's counsel followed up with this exchange:

"Q.  As long as there's machinery, a moving part; in this case a loader arm moving towards something, that's going [to] create a potential hazard?
"A.  Depending upon the situation and what task you're performing, yeah.
"Q.  And I think you had testified to counsel, Mr. Wyatt, if that happens, the machine is going to win?
"A.  The machine is a lot stronger than a human body, or a human bone I should say."

Kincaid agreed that when Kubota warned users to never carry riders, it was intended to communicate that the operator's chair was the only safe place to ride on the machine. Kincaid stated, more than once, that riding on the skid steer was taking a "calculated risk." In earlier depositions, Kincaid acknowledged that if he had followed the warning not to ride the skid steer, then "[w]e wouldn't be here."

Kentzler testified that he was aware he should not operate the skid steer with someone riding it. He also knew of and understood the warning label instructing him never to carry riders on the skid steer. Kentzler explained that he knew that raising the

4

loader arms on the skid steer with a person riding on the outside placed that person at risk of serious injury. But Kentzler also informed the jury that catching a ride on the skid steer was a "pretty common" experience in performing farming tasks.

Jeff Brawner testified that, as a third-generation Reno County farmer, he started working with farm equipment in grade school. Brawner regularly hired teenagers, including Kincaid, to operate farm equipment. Brawner went on to explain that workers catch rides on farm equipment, including skid steers, and he allowed it despite his awareness of the risks and the warnings against it. He testified that the only hazard he could think of associated with a skid steer was falling from it. Waggoner testified that he worked for Brawner for four years and, in that time, rode on farm equipment and commonly saw other workers riding on equipment such as skid steers, tractors, and combines.

Another multi-generational farmer, Cy Cokeley, testified that he had started operating farm equipment roughly between the ages of 10 to 11 years. Cokeley testified that he also hired help, but there was no certification for operating farm equipment, only on-the-job training. Cokeley explained that riding on farm equipment, despite warnings of risk, was sometimes "necessary to get done what you have to do" as part of the reality of farming.

The day before the accident, their employer, Harbaugh, observed Kincaid riding on the front of the skid steer and did not object or tell him it was dangerous. Harbaugh himself "didn't feel like we were doing anything wrong" when he used the skid steer to lift Kincaid up in the air to make sure the fence they were building was straight. Harbaugh testified that farmers sometimes misuse equipment when there are real-world problems to be fixed with limited time and resources and the job needs to get done.

The farmers' testimony about the necessity of riding equipment echoed Kincaid's testimony about his decision to ride the skid steer on the day of his injury. Kincaid testified as follows:

"The cost benefit analysis here was trudge through a half-mile of awful conditions. You know, your boots full of water at 8:15 in the morning when it was, I'd say, probably 35 degrees[,] 40 degrees, you know, having your boots full of water, mud, everything else, or get on the machine and be able to make it in a timely fashion; instead of having to pull your boots out of the mud every other step."

Dr. Lila Laux, a human factors engineer retained by Kincaid, analyzed the Kubota skid steer's warnings. *Kincaid*, 2020 WL 3022977, at *2. Dr. Laux testified that manufacturers must account for users "as they are and not as they . . . ought to be." This means that engineers "might hope people will use the product in a certain way, but we have to go out and verify that by observing in the real world how people are actually using the product; because sometimes people don't use it the way we want them to use it." Dr. Laux proposed a pictorial warning label of her own, offered into evidence over Kubota's objection. The warning label depicted a person sitting in the spot where Kincaid sat, with the text:

"WARNING

"CRUSH HAZARD

"You can be crushed if arms/attachments are raised. Do not sit or ride on any part of the machine at any time."

Dr. Laux justified her proposed additional label by saying that the danger was not obvious to users. Specifically, the pinch point between the overhang and the loader arms "is a latent hazard that they do not know about." A user might choose to ride on the skid

steer mistakenly believing that they were taking a minor risk of falling off rather than a large risk of being crushed. Dr. Laux explained that she teaches manufacturers in seminars that an "adequate" warning must tell users the correct level of hazard, meaning the degree of danger created by the specific hazard. Dr. Laux testified that warnings need to be specific about the danger being warned of, that it is not sufficient to tell users about merely the level of hazard, and that a manufacturer should also inform users "what the hazard is specifically." A warning should be "specific and explicit," meaning that it explains both that there is a hazard and what could happen to the user when interacting with the hazard.

Dr. Laux testified that Kubota's warnings on the skid steer were not adequate. She explained that the words "Never carry riders" on the label submitted as Kubota's Exhibit 1 was not a warning adequate to advise users of the pinch point hazard. She also testified that it was foreseeable to Kubota that people would ride on the skid steer because catching rides on farm equipment happens "all the time." She explained that a warning not to sit or ride on any part of the machine at any time is inadequate because it does not tell users why they should not sit or ride on the skid steer because a warning should "provide information about the nature of the hazard, and the nature of the hazard here in particular is this crush hazard."

Sustaining Kubota's objections, the district court did not allow Dr. Laux to testify about whether Kubota should have identified the pinch point hazard and should have given a specific warning about it. The district court based its ruling on Dr. Laux's lack of qualification to testify about skid loaders or the mechanics of skid loaders.

Manufacturers other than Kubota affix labels to their skid steers warning users never to ride on the machine other than in the operator's seat. No other manufacturer used a warning label like the one proposed by Dr. Laux, advising users of the pinch point between the cab and a front attachment.

7

Kubota moved for judgment as a matter of law at the close of Kincaid's case. Kubota again moved for judgment as a matter of law at the close of all evidence. The district court denied both motions and sent the case to the jury.

The jury awarded damages of over $22 million to Kincaid based on Kubota being 50% at fault. Kubota renewed its motion for judgment as a matter of law. The district court denied the motion.

Kubota timely appeals.

LEGAL ANALYSIS

Kubota argues that the district court erred in denying its motion for judgment as a matter of law for two reasons: First, Kubota did not owe Kincaid a duty to warn; and second, Kincaid did not present expert testimony as to the applicable standard of care. We discuss both issues in turn.

I. *There was no error in denying Kubota's motion for judgment as a matter of law because the extent of its duty to warn was a question for the jury.*

We begin by noting that the parties to this appeal do not structure their briefs in the same manner, so we took the liberty of summarizing their arguments in some measure in order to adequately address all of the points raised. This first issue encompasses the parties' claims regarding Kubota's legal duty under K.S.A. 60-3305.

When ruling on a motion for judgment as a matter of law, the district court must resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019). If reasonable minds could reach different conclusions

based on the evidence, then the district court must deny the motion. 309 Kan. at 454. We apply a similar analysis on appeal—reviewing a district court's denial of a motion for judgment as a matter of law de novo to determine "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.'" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). We view the evidence in the light most favorable to the nonmoving party—in this case, Kincaid. See *Dawson*, 309 Kan. at 454.

Kubota asserts that it did not owe a duty to warn Kincaid about the specific danger of the pinch point because he knew or should have known that he was not supposed to ride on the skid steer. Although some exceptions exist, in general, manufacturers have a specific duty to warn against a product's reasonably foreseeable dangers. See *Long v. Deere & Co.*, 238 Kan. 766, 773, 715 P.2d 1023 (1986). The *Long* court pointed to a manufacturer's general duty to warn by citing the Restatement (Second) of Torts § 388 (1963):

> "'One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> "(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> "(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.'" *Long*, 238 Kan. at 772-73.

This general duty to warn is not boundless. The Kansas Product Liability Act (KPLA), K.S.A. 60-3301 et seq., limits a manufacturer's duty to warn consumers. The duty to warn about use or misuse of a product does not extend:

"To warnings, protecting against or instructing with regard to those safeguards, precautions and actions which a reasonable user or consumer of the product, with the training, experience, education and any special knowledge the user or consumer did, should or was required to possess, could and should have taken for such user or consumer or others, under all the facts and circumstances." K.S.A. 60-3305(a).

In other words, under K.S.A. 60-3305(a), the "manufacturer has no duty to warn if (1) the warnings would relate 'to precautionary conduct that a reasonable user or consumer would take for protection.'" *Duffee, by & through Thornton v. Murray Ohio Mfg.*, 879 F. Supp. 1078, 1082 (D. Kan. 1995).

On appeal, Kubota only discusses this first exception, even though two other exceptions exist in the statute, when (b) the situation is one where a reasonable user or consumer would have taken the precaution, or (c) the warnings would relate to open and obvious hazards that a reasonable user or consumer would appreciate. See K.S.A. 60-3305(b), (c); *Duffee*, 879 F. Supp. at 1082.

Kubota asserts that Kincaid's testimony shows that he was familiar with farm equipment generally and this Kubota skid steer specifically. He had, after all, used it the previous day. The record establishes that Kincaid knew the following:

- A label or sticker likely warned the operator to never carry riders;

- the precaution to avoid injury was not riding on the machine;

10

- the safeguard to avoid injury was to not ride on the machine;

- using the skid steer as a man lift came with a danger of falling off;

- the machine was much stronger than the human body; and

- riding on the skid steer was a calculated risk.

While these facts show that Kincaid knew of dangers generally associated with riding on the skid steer, they do not establish as a matter of law that he knew or should have known of the specific danger in this case—that the space between the cab overhang and the front attachment formed a pinch point that could crush his body. See, e.g., *Meyerhoff v. Michelin Tire Corp.*, 852 F. Supp. 933, 944 (D. Kan. 1994); *American Family Mut. Ins. Co. v. Techtronic Industries North America, Inc.*, No. 12-2609-KHV, 2014 WL 2040158, at *9 (D. Kan. 2014) (unpublished opinion) (some hazards are latent or nonobvious such that even experienced users may not fully appreciate the risk).

Kubota argues that Kincaid knew of a precaution that would have prevented his injury—not riding on the skid steer. Kubota claims that K.S.A. 60-3305(a) eliminates the duty of a manufacturer to warn against precautions or safeguards of which a user is already aware, and argues that the facts established at trial show that Kincaid knew that riding on the skid steer while it was in operation was not safe. Kubota contends that Kincaid may not have recalled the specifics of the warnings that were actually on the skid steer, but his trial testimony clearly established that he knew and expected there was a warning not to ride it.

During the first appeal in this case, this court compared side-by-side deposition testimony from Kincaid. In his first deposition, he acknowledged that riding on the skid steer was not safe by any means. But in a later deposition, he testified that riding on the

skid steer was safe and reasonable. We found that at trial, Kincaid could "explain any discrepancy in his testimony, and the jury can evaluate the context of the seemingly contradictory statements, make a credibility determination, and resolve the issue." *Kincaid*, 2020 WL 3022977, at *8.

At trial, Kincaid explained that he understood different dangers related to riding the skid steer, telling the jury which dangers he foresaw and which he did not. Kincaid started out by explaining young farm workers often need to ride skid steers to save time, save energy, and maximize efficiency. He began working with skid steers as early as 12 years old and had learned to beware of falling off while riding, getting run over, falling out of the bucket while using it as a man lift, and being crushed by an object such as a hay bale falling off the skid steer. Kincaid knew that the skid steer presented dangers even when not riding it, pointing to his experience performing maintenance and the hazard warnings he had seen multiple times while servicing the machine. But he explained that he did not know about the danger of being crushed while riding in front of the operator's seat, as he was in this case.

We are required to view the evidence presented in the light most favorable to Kincaid as the nonmoving party. *Dawson*, 309 Kan. at 454. Kincaid testified to a history of mitigating the apparent risks of riding the skid steer while navigating the requirements of farm work. Several witnesses testified to the necessity of catching rides on a skid steer. Kincaid understood that the best precaution would be not to ride the skid steer but believed a moderate risk was reasonable under the circumstances. Kincaid's testimony showed that the specific risk of this pinch point was a latent hazard he had never considered. He claimed that knowledge of this particular risk associated with the skid steer would have prevented his injury and the ensuing litigation, saying, "If I would have known we wouldn't be here." We are comfortable concluding that with the facts presented at trial, the jury had sufficient evidence to determine Kincaid's knowledge of

12

whether the skid steer was unsafe and to ultimately decide as a jury that he understood some dangers while he remained unaware of others.

But Kubota's argument focuses on the precaution, not the danger. Kubota is correct that it has long been true that there is no duty to warn against a danger when the user already knows of the danger. See, e.g., *Long*, 238 Kan. at 773; *Brand v. Mazda Motor Corp.*, 978 F. Supp. 1382, 1389 (D. Kan. 1997). In this appeal, Kubota does not contend that Kincaid actually knew the specific danger of the pinch point. Instead, it claims that K.S.A. 60-3305(a) eliminates a manufacturer's duty to warn of a danger when a user knows of a *precaution* which, if followed, would avoid the unknown danger. This distinction does not carry the day for Kubota. Under Kansas law, a manufacturer has a duty to warn of all potential dangers which it knew to exist, or in the exercise of reasonable care should have known to exist. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 405, 681 P.2d 1038 (1984); *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 917 (10th Cir. 2005).

Kubota points to the K.S.A. 60-3305(a) exception to the general duty to warn—arguing that warning about a precaution but not the danger should be sufficient. Kubota is correct that the K.S.A. 60-3305 exceptions can potentially relieve a manufacturer of a duty to warn. See *Butler v. Daimler Trucks North America, LLC*, 74 F.4th 1131, 1150 (10th Cir. 2023). But Kubota's argument mischaracterizes the exception at K.S.A. 60-3305(a). It asserts that once it warned users to never carry riders on the skid steer, it had no further legal duty. This argument attacks the problem from the manufacturer's perspective, but the exception at K.S.A. 60-3305(a) views the issue from the reasonable user or consumer's perspective.

The district court's jury instructions closely followed the language of the statute. Jury instruction No. 14, at paragraph A, asked the jury to decide whether a reasonable

13

user or consumer could and should have taken the safeguard, precaution, or action under all the facts and circumstances.

The presence of a warning label is *a* factor that can play into the jury's definition of a reasonable user. But Kubota contends that no additional warning is needed, pointing to *Brand v. Mazda Motor Corp.*, where the court found that Mazda did not need to provide additional warnings about what could occur if the seatbelt was not fully secured. 978 F. Supp. at 1389. The court stated: "If such were the law, not only would the actual knowledge exception rarely apply, but manufacturers would face the unreasonable and probably impossible burden of warning consumers about every conceivable injury that could result from use and misuse of its product." 978 F. Supp. at 1389. The court found that "[c]onsidering the vast public information disseminated on the need to wear seat belts, it is a matter of common knowledge that occupants not wearing seat belts can be severely injured in car accidents." 978 F. Supp. at 1389. But the court also noted: "In some circumstances, *like where no serious injury is apparent from use or misuse, additional detailed warnings that explicitly identify injuries or risks may be appropriate*." (Emphasis added.) 978 F. Supp. at 1389.

Consider a case with facts much similar to the case at hand—*Hiner v. Deere and Co., Inc.*, 340 F.3d 1190, 1192-96 (10th Cir. 2003) (applying K.S.A. 60-3305). In that case, evidence was presented that Arvine Hiner knew about the hazards of roll-down accidents, where a hay bale could roll from a front-end loader and fall onto the driver. He also knew about available safety devices, including a canopy preventing objects from falling onto the operator. What Hiner did not know was that carrying the hay bale low—just a foot and a half off the ground—was not enough to prevent injury because of the "self-raising" possibility of a front-end loader. 340 F.3d at 1192. While Hiner was transporting the hay bale, the loader raised the hay bale "without conscious operator input," causing it to fall onto him. 340 F.3d at 1192. The *Hiner* court determined that a jury should decide the fact issue of whether Hiner's knowledge, and gaps in his

14

knowledge, made his action of carrying the hay bale reasonable. 340 F.3d at 1195 (applying K.S.A. 60-3305). We agree with this holding.

Based on its verdict in this present case, the jury clearly believed that a reasonable consumer might not have known from the warning label that raising the front attachment would injure a person seated on the center step. The district court properly refused to overturn that considered conclusion. See *Richter v. Limax Intern., Inc.*, 45 F.3d 1464, 1470 (10th Cir. 1995) ("A judgment as a matter of law rendered after a verdict has been entered is appropriate only when reasonable minds could not possibly differ as to an issue's necessary outcome."). Another jury might have reached a different conclusion from the evidence, but that does not warrant judgment as a matter of law for Kubota. See *Miller v. CNH Indus. America LLC*, 713 F. Supp. 3d 1104, 1114 (D. Kan. 2024).

II. *There was no error in denying Kubota's motion for judgment as a matter of law because Kincaid did not need to present expert testimony on the standard of care.*

Kubota's second argument on appeal is that the district court erred in denying its motion for judgment as a matter of law because Kincaid did not present expert testimony on the applicable standard of care for manufacturers of heavy agricultural or construction equipment. In response, Kincaid argues that Kansas law did not require him to present expert testimony using the magic words "standard of care" to prevail.

The parties argue considerably over the extent and details of the testimony from Dr. Laux, Kincaid's expert witness. While she testified extensively about human factors engineering and about warning labels, she did not provide the jury with an industry standard of care for heavy agricultural equipment like skid steers. The parties, for all their many disputes, do not dispute this point of Dr. Laux's testimony. Kubota argues that this fact means that the jury had insufficient evidence because Kincaid needed to present expert testimony on the standard of care. To support this argument, Kubota points to

15

*Gaumer v. Rossville Truck & Tractor Co.*, 41 Kan. App. 2d 405, 408, 202 P.3d 81 (2009) ("Whether expert testimony is necessary to prove negligence is dependent on whether, under the facts of a particular case, the trier of fact would be able to understand, absent expert testimony, the nature of the standard of care required of defendant and the alleged deviation from the standard."), *aff'd on other grounds*, 292 Kan. 749, 257 P.3d 292 (2011).

But Kubota's cited cases on this issue focus on the wrong type of claim—discussing general negligence rather than a products liability failure to warn claim. These references to experts establishing a standard of care are in negligence cases which do not involve the K.S.A. 60-3305 duty to warn consumers. Meanwhile, "'Kansas law does not require expert testimony to prevail on a failure to warn claim.'" *Noll v. Bridgestone Americas Tire Operations, LLC*, No. 09-4092-KGS, 2011 WL 4526775, at *5 (D. Kan. 2011) (unpublished opinion) (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 208 F. Supp. 2d 1187, 1197 [D. Kan. 2002]). This is because failure to warn cases under K.S.A. 60-3305 differ from other negligence cases. While a jury of laypeople would need guidance from an expert in determining whether a professional was negligent in that professional's field, a failure to warn claim necessarily asks whether the average user or consumer either received an adequate warning or not. Thus, "[a]lthough Kansas courts have held that testimony of experts in failure to warn claims, when offered, 'should be considered,' such expert evidence is not required." *Dockhorn v. Kitchens By Kleweno*, No. 08-2307-JAR, 2010 WL 1196425, at *22 (D. Kan. 2010) (unpublished opinion) (quoting *Burton*, 208 F. Supp. 2d at 1197).

Put simply, expert witnesses are not needed to establish a standard of care for warning labels because "the adequacy of a warning [i]s an issue for the jury." *Humes v. Clinton*, 246 Kan. 590, 606, 792 P.2d 1032 (1990). Because Kincaid did not need expert testimony on a standard of care, the district court did not err in denying Kubota's motion for judgment as a matter of law.

16

Because we find no error on either point, we affirm the district court's denial of Kubota's motion to dismiss.

Affirmed.